Thank you, Your Honors. I appreciate it. I thank counsel on both sides for very helpful arguments in this case. And the case just argued will be submitted. And we'll proceed to hear argument in the next case on calendar for argument this morning, which is 24-3406, United States v. Dante Jamal McClellan. And we will hear first from Mr. Holland. You may proceed when you're ready. Thank you, Your Honors. Brooks Holland. Thank you, Your Honors. Brooks Holland appearing for Dante McClellan, who is present to join the argument in the courtroom with me. May I reserve two minutes of time for rebuttal, Your Honors. Thank you, Your Honors. This case arises out of a fraud trial that was related to the Paycheck Protection Program during the pandemic. The procedural history of this appeal is a little atypical. The case in front of the court now is an opening brief that I'm arguing for predecessor counsel who had filed the opening brief. Subsequent to the opening brief when I was appointed, I sought to file a supplemental brief and excerpts that motion was denied and we're here still on the opening brief. I was able to file a reply brief in response to the government's answering brief. The issue in front of the court is a sentencing issue that has been percolating in the courts and resulted in some... We have a precedent that resolves this issue. I mean, we have a case that looks at it in the plain error context, but is there a decision that resolves this one way or the other? I think there is this interesting jurisprudential context because we have a lot of decisions, but I would say we do not have a controlling precedent in the Ninth Circuit on this particular guidelines interpretation that's before the court. We have two unpublished panel decisions addressing the issue, both ruling in the government's favor and concluding that the advisory note here 3A permitting for consideration of intended loss as well as actual loss is a controlling interpretation of the guidelines provision at issue here. But in the most recent panel decision in the Kirliuk case, we have a persuasive dissent by Judge Bumate who takes the position that we're arguing in this matter. We also have a precedential circuit split in other circuits in the Banks case from the Third Circuit ruling in our favor that this application note should not be a controlling interpretation and should not extend the concept of loss to intended loss, only actual loss in the theories for proving actual loss. But we have the Fourth Circuit and the Sixth Circuit ruling in favor of the government's position. But in the Fourth Circuit case, we have, again, a persuasive dissent taking the position that the application note should control. So long story short, Your Honor, I think that we have a lot of jurisprudence on this question, but we do not have controlling precedent, at least in the Ninth Circuit. What's your response to the government's argument that the standard of review here should be plain error, and that, therefore, you're then governed squarely by the Hackett case? I would offer two responses. One would be on the record that, in fact, this error is preserved. Defense counsel at the sentencing hearing explicitly in the pre-sentence memorandum filed on behalf of Mr. McClellan objected to the consideration of intended loss, and I excerpted the precise language. It's kind of a peculiar document, because he definitely argues that here's the actual loss, and then this piece is intended, and you should not include the intended loss. But then has a paragraph after that that quotes the note, and then doesn't say how those two things go together. It's kind of hard to know what to make of that. I understand your point, Your Honor, and that's, I think, the point that the government was emphasizing in their answering brief, but as I addressed in my reply brief, I think the best interpretation of the argument counsel made was that counsel argued in the alternative and led with the argument that intended loss should not be considered and only actual loss should be considered, which would have reduced the guidelines level by two levels in the total calculation. Or in the alternative, Your Honor, if you do consider intended loss, here's how you should calculate it, and counsel offered a particular factual position from the record about how to calculate intended loss. I would offer that. When he argued that intended loss was not permitted, did he argue that it was legally impermissible, or for some other reason shouldn't have been considered? Counsel did not cite the authorities that were considering as part of the appeal here and made more of a blanket argument that intended loss should not be considered, but we would offer that that argument put the issue in front of the district court squarely enough, and the district court in the sentencing hearing repeatedly made the record that she would consider intended loss even though counsel had objected to preserve it for appeal. Let's, go ahead. Didn't counsel only object to two of the three loans under the intended loss analysis, which suggests it was just more of a factual dispute rather than a broader legal challenge to intended loss? That's correct in terms of counsel's position on the factual disputes, but we would still maintain that the fairest reading of that record was that was an argument in the alternative on the facts if the court would consider intended loss. So was the defense statement in how it lined up between actual loss and intended loss, it was loans that were funded and loans that were submitted and not funded. Is that the line that was drawn? Correct. Okay. Correct. Essentially, the completed offense and then some attempted offenses that were not... That didn't actually produce any loss because they got stopped. Correct, but it was a difference of more than $200,000 that resulted in a two-level enhancement under the loss guidelines. So a significant difference in the total calculation, but... I guess one of the questions that I have, I mean, you know, the whole issue that's been going around is whether or not the application note is a fair reading of the text of the  But I wonder, and I'm thinking in terms of Judge Berzon's dissent in Hackett, whether or not this is a situation where maybe the note doesn't matter because she pointed out that there is an intersection between the relevant conduct rule in 1B1.3 and the loss rule because 1B1.3 says that in calculating the defense level, it shall be determined on the basis of all harm that resulted from the acts and omissions specified in subsections A1 and A2 above and all harm that was the object of such acts and omissions. So that would suggest, you know, she was drawing a distinction between things that were just sort of planned, what you intended to do, and things that you actually took affirmative steps to accomplish an object. So why isn't this just covered by the relevant conduct rule plus the loss rule and the relevant conduct rule, which is in the guidelines, is not a note, puts the gloss on this and says that this counts as loss for purposes of the rule. Why wouldn't that be correct? Thank you, Your Honor. I think we need to look at two components together. First, in the relevant conduct rule, we need to remember that the relevant conduct provision begins with the clause unless otherwise specified in the particular guideline provision. So we always need to turn to the particular guideline provision to see what the language of that provision in the guideline itself that's gone through the rulemaking process, not necessarily the interpretive application notes, gives us something that is outside of the provision Your Honor mentioned about the objects of the actor's conduct. And I would connect that provision to the Castile case from this court that I think is very important in guiding to the outcome that we're arguing. In Castile, the court considered a similar issue there, though, the provision related to offense level for someone who is convicted of a controlled substances offense. And the application note that existed at that time defined a controlled substance offense to include inchoate theories for that offense, including conspiracy. Mr. Castile had been convicted of conspiracy to commit a controlled substance offense, but not the substantive offense itself. And in Castile, the court worked through all of these very similar issues and concluded that the inchoate theory of conspiracy to commit a controlled substance offense expanded the definition of controlled substance offense that existed in the guidelines at that time beyond what had been adopted through the rulemaking process itself, and therefore, did not satisfy the Kaiser test as the court applied it. And the court there was looking at somebody who, being convicted of a conspiracy, had the object to commit a controlled substance offense. That's the core element of a conspiracy offense, is for people to partner or agree with the object to commit a substantive offense. And if he was convicted of it, it means that they took the necessary steps for a jury to find this partnership and agreement beyond a reasonable doubt with that object. And the court still concluded that the application note should not apply because it expanded or extended the definition of controlled substance offense beyond what had been adopted in the actual legislative rulemaking process. I would note in Castile, also on the standard of review, the court was addressing a similar issue of an unpreserved objection to this particular guideline issue, and the court found that it would not matter even under plain error review, but noted the petitioner's argument that because this was a pure question of law, even if it was not adequately preserved, it still should be subjected to no vote review. And I wanted to add that alternative argument on the standard review. All right, thank you, counsel. We asked you a lot of questions, so I'm going to give you your two minutes on rebuttal that you had requested, but we'll hear now from the government. Good morning, your honors, and may it please the court. Lauren Watts Stanier for the United States. I'm going to start where the court started with my colleague on the other side, which is the standard of review. The standard of review here is for plain error because the legal challenge to the guidelines commentary was not raised to the district court below. Now, Judge Collins, I think you got it exactly right, which is the two paragraphs in the defense sentencing memorandum, which is the only place where defense objects to the loss calculation here. Those two paragraphs at ER 96 and 97 need to be read together. The first paragraph states the objection, and the second paragraph states the ground for the objection. The ground for the objection is plainly factual. In that second paragraph, the defense acknowledges that loss is defined as the greater of actual or intended loss, and cites the guidelines commentary. But there's no way to read that as drawing a line. It's obvious that the distinction being drawn between the loans that were funded and the loans that were not is that one was the actual loss and one was the intended loss, and it says don't do the unfunded loan. So it's don't do the intended. It more looks like, I really think this should be the argument, but I'm admitting that the note is against me. That's a fair way to read it. It's almost like a but CF, that this is what I want, but this application note is a, but I don't see how it's a factual distinction within the application note.  Two points on that, Your Honor. First is from the record, and Your Honor had an exchange with my colleague on the other side about which of the loans constituted the loss amount that defense was advocating. And I think it was actually just the three funded loans, so $500,094. The EIDL loan was not at all discussed in defense's sentencing memorandum, and the objection to intended loss was just the two later loans that were not funded. So those are the two loans in the winter of 2021. That's about $218,000. So the PSR at paragraph 16 says the intended loss should be the EIDL plus the two unfunded loans. So that's about $240,000, and please don't check my math on that, Your Honor. So it really is that the defense did not object to the entire intended loss that the PSR had identified, which again bolsters the argument or bolsters the notion. The other problem you have is that in reaching the conclusion that plain error applied, Hackett makes the point, which would apply here, that Hackett did not argue that intended loss was a legally improper measure of loss, whether under Kaiser or otherwise. It's not explicitly made here. But then the court said, nor did Hackett clearly advocate for a loss calculation based on the actual losses of the victims as opposed to a loss amount based on the actual market price at the time of the sale, etc. The opposite is true here. So he clearly advocated for a loss calculation based on the actual loss. So Hackett is distinguishable. Well, again, he didn't advocate for a loss calculation that excluded all of the intended loss that the PSR had identified. How is that true? He said, calculate my offense level based only on these funded loans. That excludes all the intended loss. Those are all actual losses. And I think, Your Honor, I acknowledge that part of Hackett and certainly that part of Hackett brings- That's why I don't see how it's a factual issue. He very clearly staked out the position, my offense level should be limited to actual losses. These were the funded loans. And then cites the note that goes the other way. I mean, it would have been nice to have another sentence to tie it all together. But I think it's a fair reading that he wanted this rule but was acknowledging it was in tension with the application note. Maybe that's enough to preserve this issue. I don't think so, Your Honor. When you look at the entire record, remember we had a three and a half hour long sentencing hearing. In front of a very careful district judge who gave Mr. McClellan's counsel every opportunity to expand on any objections that he had made to the PSR. And that includes the loss amount. So at ER 39 and 41, the district judge pronounces her finding on loss and then asks, are there any additional objections? Under the contemporaneous objection rule, rule 51, it's incumbent upon the person preserving the objection to state the objection and the grounds for that objection. And we think it was just insufficient here, given the entire record. The district court would have had to be clairvoyant to understand that Mr. McClellan was raising a legal challenge or advocating that intended loss was legally unavailable. Suppose we, just hypothetically, we don't agree with you on that. So then, you're now at the merits of the issue. And tell me why you think you should prevail. Sure, we went in two ways, Your Honor. And I understand the court did not talk about the retroactivity issue with my colleague on the other side. But that issue is really one of the most seamless way to resolve this case. Because Amendment 827 is plainly clarifying to the guidelines. The key case is United States versus Morgan. And this amendment falls solidly in within that Morgan line of cases. Did the amendment take effect that shifted this into the guideline? November 1st, 2024. And this sentencing was at the end of May 2024. At that point, the commission had already published the intention, published that on May 3rd, 2024, the intention to move this. But wasn't there, I mean, counsel is saying there's basically a circuit split on the question under the old guidelines that were operative at the time of the offense, correct? Yes, Your Honor. And- How could it be clarifying? I mean, some courts say it's one, some say it's the other. And the Sentencing Commission has the authority to change the guideline and pick one side or the other. But we can't just label that clarifying and suddenly get around ex post facto issues, can we? Well, that was precisely the issue in United States versus Morgan. And Morgan held that actually the most important factor that this court looks to in determining whether a guidelines change is clarifying is whether it resolves a circuit split. In Morgan, that change resolved a circuit split as to whether loss included interest and other types of sort of ancillary things. Here, we resolved a circuit split as to whether loss included intended loss. Just like in Morgan, that clarification means that this was a clarifying amendment that applies. As to the ex post facto issue, Your Honor, if it's clarifying, there's no ex post facto problem. The line between clarifying and amending means suppose, you know, you're in a circuit where the circuit is held that it doesn't apply and then the commission clarifies and changes it. Does that then get applied and overrules the prior circuit law and now the defendant, the law basically changes from the time the defendant committed the crime? Well, that was actually exactly the issue in Morgan. The clarifying amendment in Morgan overruled Ninth Circuit law. So that was directly before the court. And the court said, you know, it doesn't matter. The whole point of the commission clarifying this circuit split, clarifying the meaning of this word is to harmonize circuit precedent. And so even if it overrules circuit precedent, that still can be clarifying. As to the line, sort of the goalposts, the two cases cited in our briefs really set those goalposts. There's Atkins on one side, the commission lopped off a part of the relevant guideline and that was not clarifying. And then there's Morgan on the other side where the commission defined a word in commentary and that was clarifying. I see I'm running out of time. May I briefly address Kieser? Yes. Okay, great. Because we also went on Kieser. So as the court observed, the relevant... What's your response to the question I asked opposing counsel, which is maybe we don't even need to reach the Kaiser or Kieser issue because maybe this is a situation where the intersection of the relevant conduct rule in 1B1.3 and the loss rule here intersect without any need to rely on the commentary. What's your response to that? I think the court is absolutely right that the relevant conduct guideline in 1B1.3, that is the guideline that says we have to look at all the harm that was intended by the conduct. And so putting... It's not quite that, because otherwise Judge Berzon wouldn't have dissented. I mean, she was acknowledging the fact that there would be situations where you had actual acts or omissions that were committed that had an object. And so that's a little bit different from just intended in a broader sense. But here, these loan applications that got the two-level were submitted. Absolutely. And the object of those was to get a identifiable sum of money. So that was my question, is whether that is the object of the acts and omissions and the relevant conduct tells us that that has to be plugged into the loss. Yes, that is absolutely correct, Your Honor. This is a lot different from the situation in Hackett that Judge Berzon talked about in her dissent. Here, we have loan applications, as you said, that were submitted with the intent of getting an extra $200,000. The only thing that stood in the way of that was the diligence of the victim banks. So but for that diligence in detecting the fraud, Mr. McClellan would have got that extra $200,000. And that's why having that $200,000 in addition to the money he actually did get makes so much sense here and is the appropriate result. I see I'm out of time. I'm happy to continue. Yeah, if I can ask one question. Do you have any insight on how many additional pre-827 amendment intended loss cases there are? Because this is the probably third case, at least I've heard, involving this intended loss after the announcement of the amendment. And we never publish opinion because we think, look, this issue is going to be moved, but just keeps on coming. Yes, I know, Your Honor, that you've been on a couple of these panels. I don't have a good question, a good answer for that. I know I asked around in my unit, we do these fraud cases, and we couldn't think of one. Mr. McClellan's case has been slow in getting to argument because of some of the issues that Mr. Holland brought up with the procedural history. So I would expect this is the tale, but I can't give a good answer on that. All right. Thank you very much, Your Honor. We'll hear rebuttal. Thank you, Your Honor. I wanted to address my colleague from the government's argument about retroactivity of the Amendment 827. And I wanted to offer a competing interpretation of how to think of that amendment in evaluating the issue before us about how to interpret the loss rule with Application Note 3A at the time, which is that it shows that the interpretation in Application Note 3A at the time really was more of a policy judgment from the Commission in the form of an interpretive note. But it really was not an interpretive note in the sense of revealing the meaning of loss in the primary rule that had worked through the rulemaking process of the United States Sentencing Guidelines. Instead, this was almost to presage what the Commission was thinking the appropriate rule should be. And that appropriate rule, in the Commission's mind, as a policymaking body surfaced in Amendment 827. This was not the Commission retroactively suggesting— Your point is that if there really is a Kaiser problem and the Application Note just says something that is contrary to and has no basis in the text, that it can't be clarifying. Correct. It is amended through the policy-based rulemaking process. And this Court's decision in Castillo very thoughtfully worked through the separation of powers issues, working from Mistretta to the role that Kaiser plays in the interpretation of the guidelines and counseling that court should be restrained in reflexively deferring to Application Notes under the development of this jurisprudence to ensure the proper role of the Sentencing Commission in its interpretive role but also in its policymaking role. And the Amendment 827 has to be put then in a larger context. We have many amendments to the loss rule pending right now that very well could take effect at the end of this calendar year in 2026 that also significantly would affect the calculation of loss even in this case. If the government's position is correct, under the new amendments, my client actually would have a two-level lower loss guidelines offense level because of these new amendments. And we're not here arguing that those ones also should be retroactive because we're standing here in the spring and these amendments are pending for comment and consideration. So I wanted to ask the Court to see Amendment 827 instead as further evidence that the Application Note at the time was more of a policy expression rather than a sound interpretation consistent with the rulemaking process. Thank you, Counsel. The case just argued be submitted and we thank counsel on both sides.
judges: COLLINS, LEE, Fitzwater